UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK ALLMON, | No. 2:24-cv-0791-SCR |
| Plaintiff, | |
| v. | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.  For the reasons that follow, Plaintiff's motion for summary judgment will be GRANTED, and the Commissioner's cross-motion for summary judgment will be DENIED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for SSI on October 13, 2020, alleging a disability onset date of October 13, 2020.  ECF No. 9, Administrative Record ("AR") 17.  The application was disapproved initially on February 9, 2021, and on reconsideration on July 9, 2021.  AR 17.  On February 6, 2023, ALJ Carol Eckersen presided over the hearing on plaintiff's challenge to the disapprovals.  AR 36-81 (transcript).  Plaintiff appeared with Ryan Willett as counsel and testified at the

hearing. AR 36, 42. Vocational Expert ("VE") Stephen Davis also testified. AR 36, 75.

On August 24, 2023, the ALJ found plaintiff "not disabled" under Section 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 17-30 (decision), 31-35 (exhibit list).[1] On January 11, 2024, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision), 4-5 (exhibit list).

Plaintiff filed this action on March 14, 2024. ECF No. 1; *see* 42 U.S.C. § 1383c(3). The parties consented to the jurisdiction of a magistrate judge. ECF No. 11. The parties' cross-motions for summary judgment, based upon the AR, have been fully briefed. ECF Nos. 17 (plaintiff's motion), 19 (Commissioner's motion). Plaintiff also filed a reply brief. ECF No. 22.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1978 and was 42 years old as of the alleged disability onset date. AR 24, 110. Plaintiff has a high school education and can communicate in English. AR 292, 294. He worked as a trucker from July 2006 to September 2010, for a lumber business in October 2014, in sales from May to July 2015, and as a hotel maid from September to October 2020. AR 294. Asserted conditions include post-traumatic stress disorder ("PTSD"), anxiety, carpal tunnel syndrome ("CTS") in both hands, Type II diabetes, pain in the right hand's trigger finger, and a pinched nerve in the right hip. AR 293.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant

---

[1] The ALJ noted that Plaintiff was denied Disability Insurance Benefits and SSI in April 2019. AR 17. The ALJ acknowledged the presumption that a past finding of non-disability remained in effect, but found new circumstances rebutted that presumption. AR 17-18.

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *see also Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### IV.  RELEVANT LAW

SSI is available for eligible individuals who are "disabled." 42 U.S.C. § 1381a. An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id.*, § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.*, § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

////

////

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since October 13, 2020, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: lumbar degenerative disc disease, diabetes, peripheral neuropathy, bilateral carpal tunnel syndrome, right hand trigger finger and left toe amputations (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He can never climb ladders, ropes or scaffolds. He can occasionally handle and finger with the bilateral upper extremities.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on May 28, 1978 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has at least a high school education (20 CFR 416.964).
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since October 13, 2020, the date the application was filed (20 CFR 416.920(g)).

AR 20-29.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 30.

# VI. ANALYSIS

## A. The ALJ Impermissibly Limited the RFC Analysis Based on Step Two Findings

### 1. The ALJ's Findings as to Plaintiff's Mental Impairments

The ALJ found at step two that Plaintiff has various severe impairments, including "lumbar degenerative disc disease, diabetes, peripheral neuropathy, bilateral carpal tunnel syndrome," and amputations in his right hand trigger finger and his left toe. AR 20. After an extensive review of Plaintiff's mental limitations, however, the ALJ did not find any of them to be severe.

The ALJ reviewed the findings of several mental health specialists, starting with Dr. Michelina Regazzi, who performed a consultative examination on June 24, 2021. AR 21, 1358. Plaintiff reported having PTSD, bipolar disorder, and attention-deficit hyperactivity disorder ("ADHD") as of the examination. AR 1358. After the examination, Dr. Regazzi diagnosed him with unspecified depressive and anxiety disorders. AR 1361. Dr. Regazzi also found plaintiff had insignificant impairment in performing detailed and complex tasks, *moderate impairment in completing a normal workday or workweek without psychiatric interruption*, and mild impairment in interacting with coworkers. AR 1361. In February and July 2021, state agency psychological consultants similarly concluded that Plaintiff had *moderate limitations in his ability to concentrate, persist, and maintain pace* but only mild limitations in other "Paragraph B" areas of mental functioning. AR 21, 118, 143.

The ALJ found all three opinions unpersuasive. AR 21. She concluded that Dr. Regazzi's conclusions were not supported by her own "examination findings, including adequate attention and concentration" and a "cooperative" demeanor. AR 21. She also cited the fact that Plaintiff met the threshold for "substantial gainful activity" until October 2020 while caring for his mother. AR 22 (citing AR 21).

The ALJ also stated that the consultants did not have access to the full longitudinal treatment record, which did not support their conclusions. AR 21. Various outpatient and clinical notes showed that Plaintiff endorsed symptoms of either anxiety or depression from May 2020 to May 2023. AR 21-22. Plaintiff's medication varied during this period, though he

reported using over-the-counter Benadryl in August 2022 instead of psychotropic medications. AR 21-22.

The ALJ then concluded that whether individually or collectively, Plaintiff's "anxiety, depression and substance use disorder" were non-severe and only minimally limited his ability to perform basic mental work activities. AR 22. She found only mild limitations in all four areas of mental functioning, "known as the 'paragraph B' criteria." AR 22-23. Without other evidence of "more than a minimal limitation in the claimant's ability to do basic work activities," the ALJ concluded that Plaintiff's mental impairments were non-severe. AR 23 (citing 20 C.F.R. § 416.920a(d)(1)).

### 2. Parties' Arguments and Analysis

Plaintiff argues the ALJ erred by not including any of his diagnosed mental impairments like PTSD, anxiety, and bipolar disorder. ECF No. 17 at 14 (citing AR 1559, 1590). Plaintiff cites *Glanden v. Kijakazi*, which held that step two is "a de minimis requirement" where a claim only fails if there is an "unambiguous record showing only minimal limitations." *Id.* at 14-15; 86 F.4th 838, 843 (9th Cir. 2023)). Defendant responds that *Glanden* is not relevant because unlike here, the ALJ denied the claim at step two due to a lack of any severe impairments. ECF No. 19 at 5 (citing 86 F.4th at 843-44). Defendant argues that the Court should instead follow *Buck v. Berryhill*, which held that if the ALJ finds in Plaintiff's favor at step two, any error therein is harmless and cannot justify remand. ECF No. 19 at 5 (citing 869 F.3d 1040, 1049 (9th Cir. 2017)).

Defendant is correct that on its own, the failure to find one impairment "severe" in step two is harmless error if another impairment was found severe and the ALJ continued the five-step analysis. The Court need not consider whether the ALJ erred in finding Plaintiff's mental impairments non-severe. Plaintiff argues, however, that the error was not harmless in this case because the ALJ then failed to adopt any non-exertional (i.e., mental) limitations in the RFC determination. ECF No. 17 at 17-18. This shows that although Plaintiff formally argues that the ALJ should have found his mental health impairments severe at step two (ECF No. 17 at 14), the substantive issue is whether she sufficiently analyzed Plaintiff's RFC.

7

When constructing an RFC based on a plaintiff's testimony and medical opinions, an ALJ is not required to incorporate evidence from sources whose opinion the ALJ has properly discounted. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The Court will uphold an RFC determination if in accordance with the proper legal standard and supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). *Buck* emphasized, however, that step two "is not meant to identify the impairments that should be taken into account when determining the RFC." 869 F.3d at 1048-49. An improper step two finding itself does not prejudice a plaintiff if the analysis does not end by step three because in formulating the RFC the ALJ "must consider limitations and restrictions imposed by all of an impairments," severe and non-severe alike. *Id.* at 1049. In other words, "[t]he RFC…*should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis original).

The ALJ effectively admitted that she did not consider all relevant evidence in her RFC analysis. After finding that any mental impairments were non-severe, she correctly acknowledges that the "Paragraph B" limitations are not an RFC assessment and are only "used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." AR 23. Despite this, she assumed that "as the claimant has non-severe mental impairment(s)," he has "no functional limitations resulting from mental impairment at the remaining steps of the analysis." AR 23. No authority supports this assumption. The ALJ cites 20 C.F.R. § 416.920a(d)(1) and Social Security Ruling ("SSR") 96-8p for support, despite the latter warning that an RFC must incorporate "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" AR 23; SSR 98-6p.

Defendant notes the ALJ then held that even if she credited Dr. Regazzi and state consultant opinions and found "moderate limitation in the 'paragraph B' finding of adaptation and self-management and in a limitation to simple work tasks," Plaintiff would still be capable of the "unskilled, simple jobs" referenced in the VE's testimony. ECF No. 19 at 5; AR 23. As an initial matter, the consultants found a moderate limitation in Plaintiff's ability to concentrate, persist, or manage pace, not in the ability to adapt or manage oneself. AR 118, 143. In any case, a VE's

testimony only has evidentiary value if the hypothetical person presented to the VE reflects all the claimant's limitations. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). At no point during the hearing did the ALJ ask the VE to assume such hypothetical person could only perform simple work tasks, or otherwise restrict the hypothetical person beyond the RFC. AR 24, 77-79. The VE's testimony does not cure the ALJ's failure to properly consider mental impairment and non-exertional limitations that were never presented to the VE.

Defendant cites *Woods v. Kijakazi* to argue that an ALJ is not required to include RFC limitations that reflect mild limitation ratings in Paragraph B criteria. ECF No. 19 at 9 (citing 32 F.4th 785, 794 (9th Cir. 2022)). The ALJ in *Woods* had found mild limitations in only two of these criteria, and the Ninth Circuit found that the RFC "expressly reflected these limitations." 32 F.4th at 794. As Plaintiff notes, the ALJ here found mild limitations in all four criteria rather than just two. ECF No. 22 at 9; AR 22-23. In any case, the ALJ's error did not directly lie in her failure to incorporate non-severe mental limitations into the RFC. Rather, as discussed above, she erred by categorically assuming that the underlying evidence as to mental limitations was irrelevant to Plaintiff's RFC because she had not found any severe mental impairments in step two.

ALJs commit to evaluating SSI applications through five steps that they "follow in a set order." 20 C.F.R. § 416.920(a)(4). They must proceed to the next step if and only if they cannot determine whether the claimant is or is not disabled at the current step. *Id.* Here the ALJ apparently compressed step two, step three, and the RFC determination preceding step four into a single analysis of any potential mental impairment and limitations. This error is not harmless and in itself merits remand.

### B. The ALJ Erred by Rejecting Plaintiff's Subjective Testimony as to Mental Limitations, but not as to Physical Limitations

1. Testimony and ALJ Holding

At the hearing, Plaintiff testified that his conditions include diabetes, peripheral neuropathy, CTS in both hands, two missing toes on the left foot, pain in the right hand's trigger

finger, anxiety, depression, and a complete lack of range of motion in the right ankle. AR 58-59. The ankle injury occurred in 2008 as part of a trucking accident, resulting in pain and weakness in that leg. AR 59-60. A 2009 gastric bypass procedure also left him without much muscle in his body, causing further weakness in both legs when combined with his drug addiction. AR 60-61. He was sober for two years before a five-day binge on fentanyl and vodka ending May 30, 2020, and has been sober since. AR 61. As to diabetes, Plaintiff's blood sugar normally stays at 103 but increases to 230 after a meal like spaghetti, with an average A1C of 6.7-7. AR 64.

Plaintiff takes a variety of medications to manage his conditions. AR 64. Side effects of pain medication include nausea, vomiting, and sleepiness, with nausea also a side effect of his other medication. AR 64.

Plaintiff explained that he takes care of his 70-year-old mother, who has severe arthritis, chronic panic attacks, PTSD, and a hard time moving around. AR 43. He takes her to doctors, goes grocery shopping for her, helps her prepare meals, and prepares one for her whenever he prepares one for himself. AR 44. They eat two meals a day which are usually either heated up or ordered via food delivery services, with the occasional exception of making enchiladas from scratch. AR 62. Plaintiff does not help lift his mother on account of her size, nor help her with toileting and showering, both of which she only recently lost the ability to do herself. AR 44-45.

Plaintiff takes care of his own hygiene and grooming. AR 62. Because of open ulcers on the pivot points on his feet, Plaintiff can sometimes lose balance getting in or out of the shower. AR 64-65. He shaves no more than once a week due to difficulty handling small items like razorblades with precision. AR 65.

Chores include loading the dishwasher, putting clean dishes away, putting groceries away, sweeping the floors, taking out the garbage, doing his own laundry, and cleaning the toilet. AR 63. He doubts he can bend over for more than a minute while supporting himself, eliminating the possibility of any deep cleaning. AR 69. Sweeping is simple because of how small the floorspace is, but bending over to floor-dust and getting back up is difficult. AR 65. Everything must be eye-level because both bending too far down and reaching up hurts. AR 66. He bought a grabber to help with reaching, but squeezing the grabber repeatedly also causes problems like

cramping. AR 66. He wears wrist braces after a few minutes of any such activity, like drawing, to the point that he wears them virtually all the time. AR 73-74.

In the aftermath of the toe amputations, Plaintiff received shoes with artificial toes built into the soles. AR 67. They squeezed the exposed nerve endings at the amputation point. AR 67. Between these, the ulcers, and a bone spur in his right foot, Plaintiff is in too much pain to walk a lot. AR 67. Slanted areas and stairs present the biggest problems, and he has fallen. AR 67. He can walk 100 yards at a time before leaning against something for five to ten minutes. AR 73.

Between his mother's errands and his own, Plaintiff drives once every other day without difficulty. AR 46. However, after ten minutes of sitting in the car, Plaintiff's back hurts. AR 46. Driving his mother to the doctor can take up to 30 minutes, but rather than stopping mid-drive, he endures the pain and stretches when he gets out. AR 46-47. These visits happen once a month, with his own visits scheduled around the same time to avoid making another long trip. AR 47.

Plaintiff testified that he is trying to do an online course through the Department of Vocational Rehabilitation. AR 47. He was not enrolled as of the hearing because the instructions for how to secure the enrollment kept changing throughout 2022 and were confusing, causing his pending application to expire. AR 48-49. Plaintiff used to have a Class A license but lost it in 2011 for driving under the influence. AR 50-51. He eventually re-obtained it, but let it go in 2013 for medical reasons, including his pacemaker, high blood pressure, and diabetes. AR 50-51.

Plaintiff worked for Quintero Trucking from 2006 to 2008, then for JMS Industries until an ankle operation forced him to quit in 2011. AR 52-55. Plaintiff worked for various employers from 2012 to 2017, his addiction to drugs and alcohol preventing him from keeping any one job. AR 55. He worked part-time in a retirement facility kitchen for six months in 2017. AR 55. Most of his income from 2019 onward stems from providing in-home support services for his mother. AR 55-56. He worked 63.4 hours per month from 2019 through 2021 and had his hours increased to 87.9 per month some time in 2022, with occasional cost-of-living adjustments to the hourly wage. AR 56, 58.

Plaintiff rated his back and foot pain at 10 out of 10 every other day, along with the pain

11

in his hands about once a week after using them too much. AR 67-68. On those days, he can focus on nothing except for wishing the pain stops, and he will cancel all his other plans. AR 68. Plaintiff can only carry a few pounds in each hand, drops small items three to four times a week, and lacks the coordination to organize individual sheets of paper from a stack. AR 68-69.

Plaintiff testified to having daily panic attacks that make it impossible to concentrate when he loses control of a situation, down to little things like whether a pencil is out of place. AR 69-70. During a panic attack, he starts "talking to God" or himself until he can process that whatever he is upset about is beyond his control. AR 70. Breathing techniques might sometimes reduce this period to 20 minutes, but other times he would need to go home for the day if he's working. AR 71. He is incapable of looking at the positive side of that situation, if any, and he has reached the point that he feels unable to enjoy anything. AR 70.

Plaintiff's physical pain has frustrated the problem, making him uncomfortable if he is not walking back and forth while people think he is on drugs when he does. AR 71. Plaintiff cannot handle a lot of people talking to him when he is focused on his pain and wishing for it to end. AR 71. He hates going to sleep because he knows he will be in pain again upon waking up, but too little sleep makes him depressed or emotional. AR 71. He averages 3-4 hours of sleep per day, split into naps between 10 and 15 minutes each. AR 72-73. Being sober, while something he takes pride in, has left him without distractions from his inner demons and his pain. AR 72.

The ALJ found that while Plaintiff's impairments could cause his symptoms, his testimony as to their intensity and persistence was inconsistent with the medical record. AR 25. She first found that based on the treatment history, several of Plaintiff's conditions were adequately controlled. AR 25. As to his CTS, for example, he had carpal tunnel releases years ago, reported significant improvement in December 2018 and July 2020, and underwent a finger trigger release procedure in July 2020. AR 25 (citing AR 417). Although X-rays revealed mild degenerative changes in both hands in May 2021, the medical record rarely showed any complaints of symptoms or of treatment for his hands after the alleged disability onset date. AR 25 (citing AR 1334).

As for the diabetes, foot pain, and diabetic foot ulcer, the ALJ acknowledged an October

2020 examination that revealed redness and infection in Plaintiff's right foot. AR 25 (citing AR 438). His first toe on the left food was then amputated in November 2020 due to "cellulitis and osteomyelitis." AR 25 (citing AR 1128-31, 1166-70). During emergency treatment for first right toe bleeding in January 2021, the examination revealed "toenail avulsion and paronychia of the right great toe." AR 25 (citing AR 1246-51). Upon hospitalization for bilateral foot pain in February 2022, left second toe osteomyelitis led to amputation of that toe. AR 25 (citing AR 1541, 1546). An April 2022 follow-up visit revealed a tender healing ulcer on the right foot, but no tenderness on the left despite a slight edema at the amputation site. AR 25-26 (citing AR 1498-1506). He continued to receive treatment for bilateral foot wounds at the wound care clinic, including the post-amputation shoes. AR 26 (citing AR 1494, 1632-33, 1636).

The treatment history of Plaintiff's back pain varied the most over time. When Plaintiff sought emergency care in April 2021 due to a two-week history of mid back pain, examinations revealed patella hyporeflexia and mild degenerative disc disease. AR 26 (citing AR 1289-94, 1336). The doctor also noted, however, that the degree of disk degeneration was unchanged since 2014. AR 26, 1291. When Plaintiff complained of muscle spasms a year later, X-rays "revealed spondylosis at L5-S1", for which he received a cyclobenzaprine prescription given the inefficacy of other pain relievers. AR 26 (citing AR 1503-06, 1528). In July 2022, less than a month after Dr. William Jornlin changed the prescription again and recommended physical therapy, he observed that Plaintiff was in no distress and sitting comfortably. AR 26, 1493-97. In September 2022, despite the lack of contact to begin physical therapy, Plaintiff's pain had not spread to his legs and he declined a Toradol injection. AR 26, 1489-92.

After claimant began physical therapy, he requested discharge in November 2022 due to continued pain and irritability in his lower back. AR 26, 1466-74. During a post-therapy appointment with a physician later that month, Plaintiff explained he could not tolerate some pain relievers, found others ineffective, and could not take nonsteroidal anti-inflammatory drugs due to the gastric bypass surgery. AR 26 (citing AR 1480-82). He was prescribed hydrocodone and underwent a CT imaging scan, which revealed disc bulges and narrowing at L3-4 and L4-5 vertebrae. AR 26, 1628-29. In January 2023, Plaintiff reported that the back pain had worsened

but still not spread to his legs.  AR 26, 1615-17.

The last medical visit the ALJ considered regarding Plaintiff's back pain occurred in May 2023, when Plaintiff reported midback pain wrapping around his chest.  AR 26 (citing AR 1672-74).  Plaintiff reported he could sit for 30 minutes, stand for 10-30 minutes, and walk 2-4 blocks.  AR 26 (citing AR 1672).  Plaintiff's symptoms were normal except for a bone disc complex in the L4-5 vertebrae disc, which would not explain the pain because the CT myelogram was not in the same region as the symptoms.  AR 26, 1673-74.  The neurologist did recommend additional scanning of Plaintiff's thoracic spine, which never occurred.  AR 26, 1674.

Turning to the substance of the testimony, the ALJ then briefly found that the record did not reflect daily panic attacks or other debilitating mental health symptoms.  AR 26-27.  Plaintiff admitted at the hearing that he pushed through his anxiety and pain to do what he needed to do.  AR 27.  Hardly any evidence supported his assertions that he struggled to hold or grasp objects, maintain his balance, sit, stand, or walk.  AR 27.  The record does not support allegations that any of his medications caused nausea or vomiting, and he has already stopped one of the prescriptions he accused of causing sleepiness.  AR 27.  Finally, the ALJ also noted that in addition to doing a variety of chores and tasks for his own survival, Plaintiff performed a variety of these services for his mother as well.  AR 27.  The ability to complete these daily activities suggested that Plaintiff was capable of light exertional work.  AR 27.

2. Governing Law

Evaluating a claimant's subjective testimony is a two-step process.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citations and quotations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  *Id.*  Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ cannot reject the claimant's

14

testimony about the severity of such symptoms unless there is "'specific, clear and convincing reasons for doing so.'" *Id.* at 1014-15 (internal citations omitted).

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

An ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ can, however, refer to a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment).

### 3. The ALJ Erred in Rejecting Subjective Testimony on Mental Limitations

Citing the ALJ's step two analysis, Plaintiff argues that the ALJ improperly discounted mental limitations like panic attacks and anxiety based on generally normal findings during telephonic examinations. ECF No. 17 at 19 (citing AR 22, 1557, 1561, 1567, 1571, 1575, 1580, 1586, 1590, 1599). Plaintiff notes that he consistently reported such panic attacks and hesitation in going outside during those phone calls. ECF No. 17 at 19 (citing AR 1571, 1575, 1576, 1580, 1586, 1596). Plaintiff further argues that Dr. Regazzi found moderate limitations in his ability to maintain a schedule. ECF No. 17 at 19.

Defendant argues that the ALJ did not use these findings to discredit Plaintiff's testimony, but merely to assess Plaintiff's alleged mental impairments in relation to the four "Paragraph B" functional areas. ECF No. 19 at 6. Defendant is technically correct, but therein lies the fundamental error. As discussed above, the ALJ used this analysis to find none of the mental impairments were severe for the purposes of step two. She then, however, improperly held this precluded consideration of mental impairment or related evidence when formulating the RFC.

*See supra* VI.A; AR 23.

Nor can the Court assume that the ALJ meant to link the evidence discussed during step two to her RFC analysis. A court can only affirm an ALJ's decision based on findings actually made, although a decision written "with less than ideal clarity" should be upheld "if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121 (citations and quotations omitted). Here, the ALJ makes no reference to the mental health record when justifying the RFC finding. *See generally* AR 24-28. The court cannot reasonably infer that the ALJ silently reconsidered this evidence under the appropriate standard at this step.

Assuming *arguendo* that the ALJ did intend to discount Plaintiff's testimony based on generally normal examination findings, these findings are insufficient. Improvement in someone who "suffers from severe panic attacks, anxiety, and depression" does not necessarily mean that that the mental disability no longer affects the plaintiff's ability to function in the workplace. *Garrison*, 759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). Symptoms must be interpreted in the context of the patient's overall well-being, with the understanding that symptoms that would prevent someone from functioning in the workplace may not manifest "while being treated and while limiting environmental stressors[.]" *Garrison*, 759 F.3d at 1017. That Plaintiff demonstrated normal mood and affect during various examinations, telephonic or in-person, is inadequate to refute testimony that his pain and panic attacks would be debilitating in a workplace environment.

On the face of the ALJ's decision, the sole basis for discounting Plaintiff's testimony as to panic attacks or anxiety is an assertion within Plaintiff's testimony itself. Specifically, the ALJ states Plaintiff admitted that any panic attacks did not prevent him from finishing his daily activities. AR 26-27. Whether Plaintiff admitted this is unclear. *See generally supra* VI.B.1. In any case, Plaintiff explained that he can occasionally limit his anxiety attacks to 20 minutes. AR 71. Plaintiff correctly notes that although he can schedule at-home activities around such attacks, this does not mean he can effectively function in a workplace setting if he experiences one during the workday. ECF No. 17 at 19.

The ALJ's failure to consider mental health evidence after step three invalidates her

conclusion as to non-exertional limitations. Because this court is ordering the ALJ to properly distinguish between the different steps, however, she will have to consider such evidence in reformulating the RFC. When conducting this analysis, the ALJ may not discredit Plaintiff's testimony based solely on normal conduct during examinations and the limited length of his panic attacks.

  4. <u>The ALJ Committed Harmless Error when Rejecting Subjective Testimony on Physical Limitations</u>

Plaintiff objects to the ALJ's reliance on Plaintiff's ability to care for his mother in refuting his testimony as to physical pain and limitations. ECF No. 17 at 18. Plaintiff explained during the hearing that he is only paid to help her a little over 80 hours a month, or about 20 per week, and even less until 2022. *Id.*; AR 56, 58. Defendant responds that the portion of time for which Plaintiff is paid only affects whether that qualifies as "part relevant work" during step four, not whether such work contradicts testimony regarding his limitations. ECF No. 19 at 8 (citing *Lewis v. Apfel*, 236 F.3d 503, 516-17 (9th Cir. 2001)).

Although the numbers of hours per month Plaintiff officially provides in-home support services is not directly relevant, it does illustrate a different issue. As Plaintiff notes in reply, working such responsibilities around his own pain and limitations is different from trying to fulfill time-sensitive duties at a full-time job. ECF No. 22 at 5. The Court agrees that without further explanation, the recitation of Plaintiff's daily activities for both himself and his mother cannot justify discounting subjective testimony.

The question then becomes whether the error was harmless, or "inconsequential to the ultimate nondisability determination." *Stout*, 454 F.3d at 1055. Where, as in this case, the ALJ provides specific reasons supporting a conclusion, "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). In other words, if an ALJ provides multiple "record-supported reasons for discrediting the claimant's

testimony," an error in any one reason is harmless on its own. *Stout*, 454 F.3d at 1055 (citing *Batson*, 359 F.3d at 1197).

The ALJ did not rely solely on Plaintiff's testimony about at-home activities. As Defendant notes, she also found that Plaintiff's underlying impairments were adequately controlled based on the comprehensive treatment history. ECF No. 19 at 7-8; AR 25-26. Plaintiff does not challenge this interpretation of the medical record or how it justifies the RFC. *See generally* ECF No. 17 at 18-19. Additionally, the ALJ noted a May 2023 visit where Plaintiff estimated he could sit for 30 minutes, stand for 10-30 minutes, and walk 2-4 blocks. AR 26, 1672. This contradicts Plaintiff's testimony months prior that he needs a five-minute or ten-minute break after walking only 100 yards. *See* AR 73. Any error as to another justification for the RFC, like Plaintiff's daily activities, is therefore harmless and does not merit remand.

5. Conclusion

The ALJ must revisit her RFC determination based on evidence she wrongfully excluded at a prior step from further consideration. This includes reconsideration of her decision to discount Plaintiff's subjective testimony as to mental limitations. Remand is the appropriate remedial step under these circumstances.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is DENIED;

3. This matter be REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court shall enter judgment for Plaintiff and close this case.

DATED: August 25, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE